IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KELVIN MERRITT, # B-78207, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 16-cv-102-SMY |
| | ) |
| GONDINEZ, SHERRY BENTON, | ) |
| SUSAN HILL, UNKNOWN PARTY, | ) |
| KIM BUTLER, SIMPSON, | ) |
| PHISTER, C/O MINOR, | ) |
| SGT. QUALLS, and LT. PAYNE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff, currently incarcerated at Pontiac Correctional Center ("Pontiac"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He claims that Defendants Gondinez, Benton, Hill, Butler, Simpson, Phister and the Unknown Party Grievance Officer failed to provide him with access to the prison grievance process and/or refused to consider or answer his grievances. Some of the above Defendants are officials at Pontiac and others are at Menard Correctional Center ("Menard"), where Plaintiff was confined beginning in June 2014. Additionally, Menard Defendants Minor, Qualls and Payne allegedly retaliated against Plaintiff for his litigation and grievance activity, subjected him to excessive force and falsely charged him with disciplinary violations that resulted in Plaintiff's confinement in segregation.

The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints, and to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be

granted or asks for money damages from a defendant who by law is immune from such relief. Initially, however, the Court shall consider whether these distinct claims against two groups of Defendants may appropriately proceed together in the same case. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

## The Complaint

Plaintiff was transferred to Menard on June 20, 2014. Soon after his arrival, and continuing over the next year, he filed a number of grievances over medical and other issues. Much of the Complaint describes problems with prison officials' handling of those grievances. These include the failure to address Plaintiff's claims of deliberate indifference to his broken hand by nurses, the refusal of law library staff to give him copies of a grievance after he filed it (but before a response was issued), having grievances returned to him without an envelope so that officers named in the grievance could read them, grievances being wrongly rejected as having been filed too late and the failure of officials to respond at all to grievances (Doc. 1, pp. 5-7). Plaintiff describes himself as a "known litigator" who is familiar with the grievance process and the Prison Litigation Reform Act (PLRA).

At some point, Plaintiff became the target of daily shakedowns by Menard officers who threw his legal work and grievances around his cell while making threats and comments about Plaintiff's litigation and grievance activity. He asserts that these actions were taken in retaliation for this protected activity because other inmates did not have their cells searched or property tampered with in this way (Doc. 1, pp. 7-8). Plaintiff filed grievances against Defendants Minor and Qualls, as well as three other officers[1] not named as Defendants, over the harassing and retaliatory actions. The grievance officer never answered these complaints.

---

[1] Plaintiff identifies the other officers as C/O Dillday, C/O Edwards, and Major Thompson.

On January 30 (presumably 2015), Defendants Minor and Qualls searched Plaintiff's cell (Doc. 1, p. 9). They threw his property around, breaking his television and scattering his papers everywhere. Upon being returned to his cell and seeing the destruction, Plaintiff asked for a lieutenant and refused to have his handcuffs removed. Defendant Lt. Payne responded, and had Defendant Minor take Plaintiff to segregation. On the way there, Defendant Minor punched Plaintiff in the head and jaw and slammed Plaintiff's head into a pole.

Defendant Minor wrote a false disciplinary report on Plaintiff for intimidation/threat. Plaintiff was found guilty of the offense and was punished with six months in segregation. Plaintiff filed an emergency grievance over the use of force and another grievance on the disciplinary action, but never received a response to either, so was unable to challenge the tickets (Doc. 1, pp. 9, 14).

During the time Plaintiff was in segregation, he incurred three more disciplinary infractions leading to a total of nine additional months in segregation (Doc. 1, p. 10). Again, he got no response to his grievances over those punishments. He went on a hunger strike for 33 days to protest the "non-existent" grievance procedure and still got no answers to his grievances, even after discussing the problem with Defendant Warden Butler. Defendant Hill never responded to grievance(s) Plaintiff gave to her while he was in Menard segregation (Doc. 1, p. 13). Plaintiff gave at least one grievance to Defendant Spiller during that time.

Plaintiff sent copies of the grievances to Defendant Benton of the ARB, complaining that he was being "stonewalled" in his attempts to use the grievance process. Defendant Benton refused to investigate or address his complaints and told him he filed too many grievances. Plaintiff sent several grievances over Defendant Benton's conduct directly to the IDOC Director, but these communications were referred back to Defendant Benton for a response (Doc. 1, p. 11).

In July 2015,[2] Plaintiff was transferred to Pontiac. He then re-filed with Defendant Benton all the grievances which had not been answered over incidents at Menard. Defendant Benton rejected them as being filed outside the proper time frame, even though, according to Plaintiff, some of them were timely. Problems with processing Plaintiff's grievances continued at Pontiac where Defendant Simpson wrongly declared most of his complaints as being filed out of time frame (Doc. 1, p. 11). Plaintiff had to wait for months for a response to a grievance he filed with the Pontiac warden (presumably Defendant Phister) and Defendant Simpson (Pontiac grievance officer) failed to respond to other grievances within the proper time.

Plaintiff asserts that, in order to frustrate inmate lawsuits by claiming that the prisoner has failed to exhaust administrative remedies, the IDOC maintains an unwritten policy to have its grievance officers harass and stonewall prisoners who, like himself, pursue grievances and litigation (Doc. 1, pp. 12-14). He further asserts that, by refusing to assign tracking numbers to grievances, counselors make it difficult for Plaintiff and others to show that they filed their grievances in a timely manner.

Plaintiff seeks injunctive relief regarding the proper tracking and handling of inmate grievances and seeks class action status for his claims. He also requests monetary damages for the time he spent in segregation after the shakedown of his cell and assault on him (Doc. 1, p. 15).

**Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all

---

[2] The Court presumes the Pontiac transfer occurred in July 2015, based on Plaintiff's statement that he first came to Menard in June 2014 (Doc. 1, p. 5). However, the complaint is somewhat contradictory as to the timeline of events, as he also states that he was "housed in Pontiac CC from 2014 July to the present" (Doc. 1, p. 11). It appears that Plaintiff meant to indicate that he was housed in Pontiac beginning in July 2015.

future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Fourteenth Amendment due process claim against Defendants Gondinez, Benton, Hill, Butler, Simpson, Phister, and the Unknown Party Menard Grievance Officer, for failing to properly handle or respond to Plaintiff's grievances, and maintaining a policy whereby inmate grievances are not properly documented or handled to enable inmates to exhaust their administrative remedies;
>
> **Count 2:** First Amendment retaliation claim against Defendants Minor and Qualls for targeting Plaintiff for cell shakedowns and destroying his documents and property on January 30, 2015, because of Plaintiff's grievance and litigation activity;
>
> **Count 3:** Eighth Amendment excessive force claim against Defendant Minor for punching and slamming Plaintiff's body, and against Defendant Payne, for directing Defendant Miner to escort Plaintiff to segregation;
>
> **Count 4:** Fourteenth Amendment due process claim against Defendant Minor for issuing a false disciplinary report on Plaintiff, which resulted in Plaintiff being punished with segregation.

Plaintiff's claims fall into two distinct categories: First, the grievance-related claims in Count 1 against the former IDOC Director, ARB officer, wardens, grievance officers and counselor (Defendants Gondinez, Benton, Hill, Butler, Simpson, Phister, and the Unknown Party Menard Grievance Officer); and second, the claims in Counts 2, 3, and 4 against Defendant Minor, which include claims against Defendants Qualls and Payne. The claims in Counts 2, 3, and 4 are factually distinct from the grievance-related claims in Count 1 and involve different Defendants.

The two sets of claims against different Defendants raise the question of whether all Plaintiff's claims may properly proceed together in the same action. In *George v. Smith*, 507

F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George*, 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). Claims against different Defendants, which do not arise from a single transaction or occurrence (or series of related transactions/occurrences), and do not share a common question of law or fact, may not be joined in the same lawsuit. *See* FED. R. CIV. P. 20(a)(2). Further, a prisoner who files a "buckshot complaint" that includes multiple unrelated claims against different individuals should not be allowed to avoid "risking multiple strikes for what should have been several different lawsuits." *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010) (citing *George*). The Court has broad discretion as to whether to sever claims pursuant to Federal Rule of Civil Procedure 21, or to dismiss improperly joined Defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

Here, the claims against Defendants Minor, Qualls and Payne that began with the retaliatory cell shakedown on January 30, 2015 are not factually or legally related to the grievance-related claims in Count 1. While Plaintiff did file grievances over the incidents in Counts 2-4, the handling of those grievances by the Defendants named in Count 1 is a separate matter from the conduct that gave rise to Counts 2-4. The Complaint does not suggest that any of the Defendants named in Count 1 were personally involved in the alleged retaliation, excessive force or issuance of the false disciplinary ticket described in Counts 2-4.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claims in Counts 2, 3, and 4 (which are unrelated to Count 1) into a separate

action. The new severed case shall contain Counts 2, 3, and 4 and shall have a newly-assigned case number. Plaintiff shall be assessed another filing fee for the newly severed case. The severed case with Counts 2, 3, and 4 shall undergo preliminary review pursuant to § 1915A after the new case number and judge assignment has been made.

Count 1 shall remain in this action. A separate order shall be issued in this case to review the merits of this claim. Plaintiff shall be provided with a copy of the merits review order as soon as it is completed. No service shall be ordered on any Defendant at this time, pending the § 1915A review.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff's claims in **COUNTS 2, 3, and 4,** which are unrelated to the grievance-related claims in **Count 1**, are **SEVERED** into a new case. That new case shall contain the claims against **DEFENDANTS MINOR, QUALLS,** and **PAYNE.**

The claims in the newly severed case shall be subject to merits review pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new case, the Clerk is **DIRECTED** to file the following documents:

    (1)    This Memorandum and Order
    (2)    The Original Complaint (Doc. 1)
    (3)    Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)

Plaintiff **will be responsible for an additional $350.00 filing fee** in the newly severed case. No service shall be ordered on the Defendants in the severed case until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is COUNT 1* against Defendants Gondinez, Benton, Hill, Butler, Simpson, Phister, and the Unknown Party Menard Grievance Officer. This case shall now be captioned as: **KELVIN MERRITT,**

**Plaintiff, vs. GONDINEZ, SHERRY BENTON, SUSAN HILL, UNKNOWN PARTY GRIEVANCE OFFICER, KIM BUTLER, SIMPSON, and PHISTER, Defendants.**

**IT IS FURTHER ORDERED** that Defendants **C/O MINOR, SGT. QUALLS, and LT. PAYNE** are **TERMINATED** from *this* action with prejudice.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 13, 2016**

                  s/ STACI M. YANDLE
                  **United States District Judge**